KELLEN COMPANY, INC., Plaintiff,

v.

CALPHALON CORPORATION, Defendant.

No. 98 Civ. 8081.

United States District Court, S.D. New York.

June 14, 1999.

Ralph Perlberger, New York City, David Epstein, of counsel, Feith & Zell, Washington, DC, for plaintiffs.

Peter Schillinger, Schillinger & Finsterwald, LLP, New York City, Michael M. Briley, David, W. Wicklund, Jenifer A. Belt, Shumaker, Loop & Kendrick, LLP, Toledo, OH, for defendants.

## MEMORANDUM DECISION
## AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff Kellen Company, Inc. ("Kellen"), brought this action against defendant Calphalon Corporation ("Calphalon"), seeking to recover unpaid commissions and other damages pursuant to the New York Sales Representative Act, New York Labor Law, §§ 191–a—191–c. Before the Court is defendant's motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss without prejudice due to a pending, previously filed suit in the United States District Court for the Northern District of Ohio involving the same parties and issues. In the alternative, defendant moves to stay further proceedings in this case pending the final resolution of the Ohio action. Finally, if this action is neither dismissed nor stayed, defendant moves to transfer the case to the Northern District of Ohio, Western Division, pursuant to 28 U.S.C. Section 1404(a). For the reasons set forth below, judgment is entered in favor of defendant Calphalon Corporation dismissing this case without prejudice, leaving the parties to resolve thier differences in the United States District Court for the Northern District of Ohio.

## BACKGROUND

Kellen, a New York corporation, served as a sales representative for Calphalon, an Ohio corporation for twenty years. Over the years, Calphalon regularly paid Kellen commissions for the sale of its cookware products. On February 1, 1997, the two companies entered into a written Manufacturers' Representative Agreement ("MRA") under which Kellen continued as a Manufacturer's Representative for Calphalon and Calphalon continued to pay Kellen for its services. The parties signed an MRA for the period February 1, 1997 through January 31, 1998 with an option to renew. The MRA also provided that it was to be interpreted under the laws of the state of Ohio. On December 18, 1997, Calphalon notified Kellen and its other sales representatives that it would not renew their MRAs in 1998.

On May 6, 1998, Kellen and seven other former Calphalon sales representatives filed a lawsuit in the United States District Court for the Northern District of Ohio, seeking to recover unpaid commissions and other damages that allegedly resulted because Calphalon did not renew the MRAs. Plaintiffs asserted eight claims in that action: (1) breach of contract for termination of the MRAs; (2) breach of contract for failure to pay commissions earned; (3) promissory estoppel/breach of implied contract; (4) tortious interference with contract; (5) breach of the implied covenants of good faith and fair dealing; (6) negligent misrepresentation; (7) breach of fiduciary duty, and (8) a demand for an accounting.

Five months later, on October 5, 1998, Kellen filed this lawsuit in New York Supreme Court, County of Westchester, asserting claims under the New York Sales Representative Act, New York Labor Law, §§ 191–a—191–c, for failure to pay sales commissions and for late payment of sales commissions. Calphalon timely removed the action to this court,[1] pursuant to 28 U.S.C. § 1441(a). Calphalon now moves alternatively to dismiss, stay or transfer this action.

## DISCUSSION

Calphalon's principal argument in favor of dismissal without prejudice is that, because the Ohio lawsuit was filed first and involves the same parties and issues, it alone should proceed to avoid duplicative litigation. This Court agrees.

"As between federal district courts ... the general principle is to avoid duplicative

---

1. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Kellen is a New York corporation with its principal place of business in New York. Calphalon is an Ohio corporation with its principal place of business in Ohio.

litigation." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). "Courts already heavily burdened with litigation with which they must of necessity deal should ... not be called upon to duplicate each other's work in cases involving the same issues and the same parties." *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1203 (2d Cir.1970).

### 1. First–Filed Rule

■ The Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations. *See Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986); *Semmes Motors,* 429 F.2d at 1202; *William Gluckin & Co., Inc. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969). " '[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.' " *Adam v. Jacobs,* 950 F.2d 89, 91 (2d Cir.1991) (quoting *First City Nat'l Bank and Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989)). The first-filed rule seeks to advance judicial economy, protect the plaintiff's choice of forum and to avoid duplicative litigation. *First City Nat'l Bank & Trust,* 878 F.2d at 79–80; *Comedy Partners v. Street Players Holding Corp.,* 34 F.Supp.2d 194, 196 (S.D.N.Y.1999). It also protects parties from the considerable expense and potential for inconsistent judgments that duplicate litigation entails. *Comedy Partners,* 34 F.Supp.2d at 196–97.

■ It is well-established that the balancing of convenience "should be left to the sound discretion of the district courts." *William Gluckin,* 407 F.2d at 178. The interests analysis under the first-filed rule requires consideration of the same factors relevant to stay a "second filed" action on a motion to transfer under 28 U.S.C. Section 1404(a). *800–Flowers, Inc. v. Inter-*

*continental Florist, Inc.,* 860 F.Supp. 128, 133 (S.D.N.Y.1994); *Ivy–Mar Co., Inc. v. Weber–Stephen Products Co.,* No. 93 Civ. 5973, 1993 WL 535166, at *2 (S.D.N.Y. Dec.22, 1993). These factors include (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of the operative facts, (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum, (9) trial efficiency and the interests of justice based on the totality of the circumstances. *800–Flowers* at 133; *Ivy–Mar,* 1993 WL 535166, at *4.

■ The first-filed rule is not to be applied mechanically, but is intended to aid judicial administration by acting "as a 'presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Hanson,* 932 F.Supp. at 106. The party opposing application of the first-filed doctrine has the burden to show that special circumstances exist to justify an exception. *Id.; 800 Flowers,* 860 F.Supp. at 132.

Most cases in which the first-filed rule is applicable present scenarios in which the plaintiff in the first action is the defendant in the second action. *See, e.g., Isogon Corp. v. Amdahl Corp.,* No. 97 Civ. 6219, 1997 WL 759435 (S.D.N.Y. Dec.10, 1997); *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128 (S.D.N.Y.1994). By contrast in this case, the plaintiff is the same in both the New York and Ohio actions. However, as discussed further below, application of the first-filed rule is equally appropriate here.

Kellen first argues that the first-filed rule does not apply because the New York and Ohio actions involve different issues and "different subject matter." This is so, according to Kellen, because the New York suit seeks relief under a New York statute unavailable in Ohio. Plaintiff's Memoran-

dum in Opposition to Defendant's Motion to Dismiss, at 11. Plaintiff states further that the available relief in the New York courts may be greater than that available in Ohio and they should therefor be allowed to proceed in both courts.

■ Plaintiff's arguments are unpersuasive. The Ohio and New York actions clearly involve the same issues, the same parties and the same subject matter. Both lawsuits arose out of the exact same set of facts—Calphalon's termination of the 1997 MRAs—and both seek damages which allegedly resulted from that termination. Although the Ohio action—involving eight plaintiffs and eight claims—is broader in scope than the New York action—involving one plaintiff and two claims—the interests of the parties in both proceedings are substantially the same. *See Semmes Motors,* 429 F.2d at 1202 (stating that New York and New Jersey actions are in effect duplicates even though the "scope of the New Jersey action had been enlarged" by defendant's counterclaim.)

■ Furthermore, this Court believes that the second claim in the Ohio action for breach of contract for failure to pay commissions earned, is virtually the same claim as the one plaintiff asserts in the New York action seeking relief under the New York Labor law for unpaid and untimely paid commissions. The test adopted by New York courts for *res judicata,* or claim preclusion purposes is instructive here. In evaluating whether two suits involve the same "claim" or "nucleus of operative fact" for purposes of res judicata, New York courts have adopted the transactional approach. *United States v. Alfano,* 34 F.Supp.2d 827, 833–34 (E.D.N.Y.1999). "[I]f claims arise out of the same factual grouping, transaction, or series of transactions, they are deemed to be part of the same cause of action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." *Id.* (citing *Board of Managers of*

*Windridge Condominiums One v. Horn,* 234 A.D.2d 249, 250, 651 N.Y.S.2d 326, 327 (2d Dep't 1996) (internal quotations omitted)); *see also Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997) ("To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage." (internal quotations omitted)). Under this test, Kellen's claims are the same in both the Ohio and New York actions.

■ Next, Kellen proposes that if the claims are deemed the same, it will file a motion to stay Count 2 of the amended complaint in the Ohio action. Once this count is withdrawn, according to plaintiff, the first-filed rule would not apply because the cases "then would have no connection." Plaintiff's Memorandum in Opposition at 16. This argument also is unconvincing. The cases would remain connected in that they would still involve the same parties and would still arise from the same set of facts. Removing count 2 would not be sufficient to warrant deviation from the first-filed rule. Calphalon still would be forced to defend simultaneously two lawsuits arising from the same transaction and requiring substantially the same witnesses and other evidence. This Court would have to hear much of the same evidence as the Ohio district court, a forum which is equally competent to resolve this dispute and better positioned to do so since it already has before it the claims of this and seven other plaintiffs against the same defendant. Such a wasteful use of this Court's resources is unwise and unnecessary.

Kellen next argues that even if the litigations are considered parallel, involving the same parties and issues, the special circumstances of this case require an ex-

ception to the first-filed rule. However, these exceptions are an attempt to insure that the rule is not applied in cases where the circumstances reveal that the second forum is actually the more appropriate one, and the first forum was chosen for improper reasons. Most commonly, courts have recognized an exception to the first-filed rule where the first-filed action was instituted by the defendant in the second action, and the defendant won the race to the courthouse under questionable circumstances. *See, e.g., Hanson PLC v. Metro–Goldwyn–Mayer, Inc.,* 932 F.Supp. 104, 107 (S.D.N.Y.1996). Thus, one of the most common special circumstances identified by this Circuit as warranting departure from the first-filed rule "is where forum shopping alone motivated the choice of the situs for the first suit." *William Gluckin,* 407 F.2d at 178; *see also Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986) ("[T]he chief 'special circumstance' we have noted is our interest in discouraging forum shopping.").

■ Plaintiff argues that special circumstances similar to those found in *Hanson* exist here. In that case, the court found special circumstances warranting departure from the first-filed rule where (1) plaintiff filed a declaratory judgment action in an attempt to preempt the filing of a lawsuit by the defendant; (2) the defendant in the declaratory judgment action had waited to file suit in reliance upon representations made by plaintiff's lawyers; (3) and the two cases were filed only one business day apart. *Hanson,* 932 F.Supp. at 107. Plaintiff has failed to demonstrate that any special circumstances similar to those found in *Hanson* exist here.

Furthermore, *Semmes Motors,* supra, suggests that a case such as this, in which the plaintiff is the same in both actions, should not be excepted from the first-filed rule because doing so would encourage forum shopping. In *Semmes Motors,* a plaintiff who sued a defendant in a New Jersey court, later filed a parallel complaint in a New York court. *Semmes Motors,* 429 F.2d at 1202. The plaintiff stipulated to discontinuing the first action, allowing the second action to proceed, if the defendant would consent. *Id.* at 1203. Nevertheless, the court held that even though the defendant had no vested right to be proceeded against in the district in which the first suit was brought, the district court had abused its discretion in not applying the first-filed rule. *Id.* at 1203–04. Holding otherwise,

> would entail the danger that plaintiffs may engage in forum shopping or … judge shopping. When they see a storm brewing in the first court, they may try to weigh anchor and set sail for the hopefully more favorable waters of another district…. Hence, even when the same party is plaintiff in both actions, the instance where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed.

*Id.* at 1203. As in *Semmes Motors,* Plaintiff's behavior here smacks of forum shopping. Kellen chose the first forum and is now attempting to proceed simultaneously in another forum which it believes may offer greater relief on the same claim.

### 3. Choice of Law

The MRA at issue provides that it is governed by Ohio law. Kellen argues that New York law applies under the Erie doctrine and New York conflicts analysis, and that for this reason, this action should remain in a New York court.

■ A federal court sitting in diversity is required to apply the substantive law of the forum state, including the conflict of law rules. *See Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In cases involving disputes over choice of law clauses in contracts, Ohio and New York apply the same conflicts of law analysis set forth in Restatement (Second) Conflicts of Law § 187.

**224**

*S. Leo Harmonay, Inc. v. Binks Mfg. Co.,* 597 F.Supp. 1014, 1024–25 (S.D.N.Y.1984), aff'd. 762 F.2d 990 (2d Cir.1985) (adopting Restatement (Second) Conflicts of Law § 187); *see also Tele–Save Merchandising Co. v. Consumers Distributing Co.,* 814 F.2d 1120, 1122 (6th Cir.1987) (applying Restatement § 187 in diversity case governed by Ohio law); *Schulke Radio v. Midwestern Broadcasting Co.,* 6 Ohio St.3d 436, 438–39, 453 N.E.2d 683 (1983) (adopting Restatement § 187 analysis). Thus, if plaintiff is correct that New York rather than Ohio law governs its claim, the Ohio federal court is equally equipped to determine that question and the federal court will be required to apply New York law to that claim.

The question of which state's law applies does not affect the applicability of the first-filed rule in the instant action and does not constitute a special circumstance warranting deviation from that rule.

### CONCLUSION

Defendant's motion to dismiss is granted. The case will be dismissed without prejudice to plaintiff's proceeding in the United States District Court for the Northern District of Ohio. Defendant's alternative motions for a stay or transfer of this action are denied as moot. The Clerk of the Court is directed to dismiss the case without prejudice.

**SO ORDERED**